Cite as 2017 Ark. App. 2

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-761

| | |
|---|---|
| RICHARD SHAWKEY<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered:** January 18, 2017<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66JV-14-246]<br><br>HONORABLE JIM D. SPEARS, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Chief Judge**

Appellant, Richard Shawkey, appeals from an order of the Sebastian County Circuit Court terminating his parental rights to his son, D.S., born January 23, 2015.[1] He contends on appeal that the evidence was insufficient (1) to support the grounds for termination and (2) to support the court's finding that it was in D.S.'s best interest to terminate his parental rights. We find no error and affirm the circuit court's order.

The events that led to the termination began on January 25, 2015, when the Arkansas Department of Human Services (DHS) exercised an emergency hold on D.S., alleging that he was at a substantial risk of serious harm due to his mother's failure to remedy conditions that caused the removal of her older son, D.S.'s half brother, in April 2014. Appellant was identified as the putative father in the petition for emergency custody. Appellant appeared at the probable-cause hearing on February 2, 2015, and was ordered by the court to undergo

---

[1]D.S.'s mother's parental rights were also terminated, but she is not a party to this appeal.

paternity testing, which he did on March 11, 2015. He attended the adjudication hearing on March 16, 2015. In its adjudication order entered on July 6, 2015, the circuit court ordered him to do the following things: establish paternity; obtain and maintain stable and appropriate housing, income, and transportation; complete parenting classes and visit D.S. regularly; submit to a drug-and-alcohol assessment and complete any recommended treatment; submit to random drug screens and hair-follicle testing at the request of DHS and achieve and maintain total sobriety; submit to a psychological evaluation and comply with the recommendations thereof; and resolve his pending criminal charges and comply with the terms and conditions of any criminal sentences. After a review and paternity hearing on July 6, 2015, which appellant attended, the court entered an order on July 10, 2015, finding that appellant was the legal father of D.S. and finding that DHS had made reasonable efforts to provide family services.

Appellant did not appear at the permanency-planning hearing on January 4, 2016. The court's permanency-planning order, entered on March 9, 2016, found that appellant had not complied with the case plan, had not completed any services on his case plan, had not visited D.S. regularly, had relocated to Conway, and had not provided proof of his housing, employment, or transportation. Because both parents had failed to exercise visitation on a regular basis, the court stated that DHS had discretion to arrange appropriate visitation at the parents' request. The court determined that the goal of the case was adoption and authorized DHS to file a petition for termination of parental rights.

A termination hearing was held on April 4, 2016. Again, appellant did not attend. The only testimony was from the caseworker assigned to D.S.'s case, Rebecca Newton. She testified that drugs had been "an issue" for appellant. The record contains 19 positive drug

screens from January 26, 2015, through October 27, 2015, and no negative drug screens. The results included positive tests for THC, PCP, amphetamines, and methamphetamine. Ms. Newton testified that appellant had provided no documentation that he had completed any drug treatment. Ms. Newton also testified that appellant had initially visited with D.S. 13 times, but he had not visited since October 6, 2015. She stated that appellant had contacted her in January after the permanency-planning hearing to ask whether DHS could provide D.S. with transportation to Conway for a visit. She told appellant that she would need to check with the foster parents, and they discussed a visit in Russellville or Clarksville. She said that appellant never called her back and that she did not call him back, either. She did not recall why she had failed to follow through with setting up visitation. She also testified that appellant had not completed parenting classes. She said that appellant had been offered services for more than a year, that he had relocated to Conway and failed to maintain contact with her or D.S., and that DHS recommended adoption because it was not in D.S.'s best interest to be returned to his parents. She said that D.S. was adoptable and had no developmental or medical issues.

The court entered an order on May 27, 2016, terminating appellant's parental rights. The court found that DHS had proved four grounds for termination by clear and convincing evidence: (1) the child had been adjudicated dependent-neglected and had continued out of the home of the noncustodial parent for twelve months and despite a meaningful effort by DHS to rehabilitate the parent and the conditions that prevented the child from safely being placed in the parent's home, the parent had failed to remedy the conditions; (2) the child had lived outside the home of the parent for a period of twelve months and the parent had willfully failed to maintain meaningful contact with the child; (3) other factors arose

subsequent to the filing of the original petition that demonstrated placement of the child with the parent was contrary to the child's health, safety, or welfare and, despite the offer of appropriate family services, the parent manifested incapacity or indifference to remedying the subsequent issues; and (4) aggravated circumstances: there was little likelihood that services to the family would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*b*), (ii)(*a*), (vii)(*a*), (ix)(*a*)(*3*) (Repl. 2015). The court specifically found that appellant had moved to Conway after his paternity had been established and had failed to maintain contact with DHS. The court found that he had not visited D.S. in eight months, had visited only sporadically before ceasing visits altogether, and had never completed substance–abuse treatment or successfully addressed his drug use. The court also found that the circumstances regarding appellant's housing, employment, and transportation were unknown and noted that appellant had not "even" appeared at the termination hearing. The court also found that it was in D.S.'s best interest to terminate appellant's parental rights, specifically considering adoptability and potential harm.

We review termination–of–parental–rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341. In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. Adoptability is not an essential element but is rather a factor that the trial court must consider. *Tucker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 430, 389 S.W.3d 1. Likewise,

the potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Pine*, 2010 Ark. App. 781, 379 S.W.3d 703. The potential-harm analysis is to be conducted in broad terms. *Id*. It is the "best interest" finding that must be supported by clear and convincing evidence. *Id*. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). Credibility determinations are left to the fact-finder. *Kerr v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 271, at 6, 493 S.W.3d 342, 346. Finally, the intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3).

For his first point on appeal, appellant argues that none of the four grounds found by the circuit court are supported by the evidence. Proof of only one statutory ground is sufficient to terminate parental rights. *Contreras v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 604, at 5, 474 S.W.3d 510, 514. We turn first to the last ground found by the court: aggravated circumstances. Appellant argues that DHS failed to provide "the most critical service"— that is, visitation. He contends that, in January 2016, he called Ms. Newton in an attempt to arrange for D.S. to be transported to Conway for visitation. He argues that Ms. Newton never arranged a visit or called him back to discuss the matter. While the caseworker's failure to follow through on either arranging visitation or explaining to appellant why it was not possible was highly inappropriate, this one misstep by DHS does not

render the circuit court's finding clearly erroneous.

The court found that DHS had made services available to appellant for "well over one year" and that appellant had not made even minimal progress toward remedying his circumstances. The court found that the offer of more time or additional services would have been futile. The record reflects that appellant failed to complete any of the services found in the court-ordered case plan; had 19 consecutive positive drugs screens; had provided no proof that he had submitted to a drug-and-alcohol assessment or completed a drug-treatment program; had failed to submit to a psychological evaluation and comply with the recommendations thereof; and had not visited his child in eight months. Moreover, appellant failed to attend either the permanency-planning hearing or the termination hearing. We also note that a parent's past behavior is often a good indicator of future behavior. *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, 427 S.W.3d 160. From our de novo review of the record, we cannot say that the circuit court's finding on this ground is clearly erroneous. Because DHS was required to prove only one statutory ground, we do not address the other three grounds. *Contreras*, 2015 Ark. App. 604, at 10, 474 S.W.3d at 516.

Appellant also contends that the circuit court clearly erred in concluding that it was in D.S.'s best interest to terminate his parental rights. Appellant does not challenge the court's finding that D.S. is adoptable but only its finding that D.S. faced potential harm if returned to appellant's custody. He argues that there were no drug screens provided beyond October 27, 2015; that the caseworker admitted having almost no contact with appellant after she had been assigned to the case in November 2015; that DHS failed to put on the caseworker from Conway assigned to work with appellant; and that he requested a visit with D.S. but was not provided visitation.

The court is not required to identify a specific potential harm. *Pine*, 2010 Ark. App. 781, 379 S.W.3d 703. The potential-harm analysis is to be conducted in broad terms. *Id*. It is the "best interest" finding that must be supported by clear and convincing evidence. *Id*. Here, the circuit court found that appellant had not successfully overcome his drug addiction, and appellant provided no proof to the court otherwise. The court found that he had been "chronically unstable" during the pendency of the case and had failed to maintain even minimal contact with D.S. Appellant did not attend the termination hearing, and his attorney did not introduce any evidence to suggest that appellant had done anything to comply with the case plan, address his addiction, or merit additional time or services. Moreover, there was no evidence to suggest that appellant had stable and appropriate housing, a job, or transportation sufficient to care for his child. The reasonable period of time within which reunification may occur is to be viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). We hold that the circuit court's finding that it was in D.S.'s best interest to terminate parental rights is not clearly erroneous.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, Dependency-Neglect Appellate Division, for appellant.

*Andrew Firth*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.